**IN THE COURT OF APPEALS OF IOWA**

No. 22-0188
Filed April 13, 2022

**IN THE INTEREST OF S.S.,**
**Minor Child,**

**V.H., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Delaware County, Thomas J. Straka, Associate Juvenile Judge.

　　A mother appeals the termination of her parental rights.　**AFFIRMED.**

　　Bridget L. Goldbeck of Hughes & Trannel, P.C., Dubuque, for appellant mother.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Jane Hanson of Hanson Law Office, Manchester, attorney and guardian ad litem for minor child.

　　Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

A mother, Valerie, appeals the termination of her parental rights to her seven-year-old son, S.S.[1]  In her petition on appeal, she argues (1) the State didn't meet its burden to establish grounds for termination; (2) termination was not in the child's best interests; and (3) the juvenile court should have extended her time to reunify.  Because the evidence was clear and convincing, termination served the child's best interests, and more time was unwarranted, we affirm.[2]

## I.  Facts and Prior Proceedings

In August 2020, the Iowa Department of Human Services (DHS) became involved with this family after receiving reports that Valerie threatened to harm herself and S.S.  The DHS removed S.S. from the home and placed him with a relative.  The DHS also initiated safety plans and services for mother and child.

Initially, Valerie followed the DHS guidelines.  She attended supervised visitations, maintained employment, participated in mental-health treatment, and sought suitable housing.  But, over the course of 2021, her progress faltered.  In spring of 2021, the court ordered Valerie to undergo random drug screenings after the DHS expressed concern that she was "self-medicating" by using marijuana.  Those screenings were consistently positive for drug use.  In addition, Valerie's visitations, mental-health treatment, and willingness to provide drug samples became sporadic.  She made moderate progress during the summer of 2021 but backslid later that year.

---

[1] The father consented to the termination of his parental rights and is not a party to this appeal.

[2] Our review of orders terminating parental rights is de novo.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

Beyond drug testing, the DHS was concerned by Valerie's unhealthy associations. For example, her then-fiancé was a registered sex offender. And the DHS considered Valerie's father to be an inappropriate contact for S.S. after the grandfather persisted in making disparaging comments about S.S.'s caretaker. Even after she found suitable housing, Valerie allowed her father to move into the home despite DHS warnings his presence was "a barrier to reunification." The State moved to terminate parental rights in July 2021.

In September 2021, considering Valerie's improvement during the summer, the court gave Valerie three additional months to work toward reunification. The court set specific expectations for Valerie to comply with before the next court date. These expectations included providing financial support to S.S.'s placement, maintaining employment, improving engagements with S.S., and complying with mental-health treatment. Plus, her father was not allowed to be around the child.

Meanwhile, the DHS moved S.S. from his previous placement to the home of Valerie's brother and his fiancée in Cresco, nearly a two-hour drive from Valerie's home in Manchester. So visits became more infrequent. Valerie attributes this infrequency to the respective health issues of both the placement and herself. She also struggled to make the trip during winter months in bad weather. The DHS offered phone and video visits as substitutes for in-person. But Valerie did not always take advantage of these virtual options.

The court granted the State's termination petition in January 2022. Valerie now appeals that order.

## II.  Analysis

Generally, our termination analyses follow three steps.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  First, we must find a ground for termination under Iowa Code section 232.116 (2021).  *Id.*  Next, we evaluate the best interests of the child.  *Id.* at 707.  Finally, we consider any codified exceptions under Iowa Code section 232.116(3).  *Id.*  Because Valerie does not raise an issue under section 232.116(3), we will not address that step.  *See In re G.E.*, No. 19-1778, 2020 WL 1049539, at *2 n.3 (Iowa Ct. App. Mar. 4, 2020).

### A.  Statutory Ground for Termination

The court relied on Iowa Code section 232.116, paragraph (f).  Under that provision, a court may terminate rights if:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

Termination requires clear and convincing evidence.  *D.W.*, 791 N.W.2d at 706.  This standard means there are no "serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence."  *Id.*

Valerie challenges only the final element.  She argues the State did not meet its burden by clear and convincing evidence because the DHS caseworker's testimony was vague and inconsistent.  For example, Valerie notes that the DHS

could not offer specific reasons why she could not move from fully supervised to partially supervised visitations.

In that vein, Valerie refutes the State's claims that she could not be a safe parent. She attributes her disengagement leading up to the termination hearing to several factors. She points to the DHS refusal to allow less restrictive visitation, the lack of drug testing reports admitted into the record, and the difficulty she experienced traveling to visits. In addition, she maintains that she improved her parenting skills and mental-health management.

In response, the State reiterated its evidence that Valerie has not made sufficient progress with her mental health or her protective capacity for S.S. In the State's view, she remains unable to recognize negative influences in her life that could endanger her child.

We empathize with Valerie's difficulty in maintaining contact with S.S. after his move to Cresco. And we applaud the strides she made earlier in the CINA case. Yet we find the State's evidence showed that S.S. was not safe in her care *at the time of termination*. We must focus on her situation "at the present time," not on prior progress. *D.W.*, 791 N.W.2d at 707 (quoting Iowa Code § 232.116(1)(f)(4)). And at the time of termination, she was not in a position to safely parent S.S.[3]

---

[3] Our case law offers two formulations for what it means that a child "cannot be returned" to parental custody as provided in section 232.102 (discussing transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child"). Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992), which quotes section 232.102(4)(a)(2) (2021)—then numbered as section 232.102(5)(b)—for the proposition that custody should not be transferred unless the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate

While Valerie testified that she ended the relationship with her then-fiancé and acknowledged he is not appropriate to be around S.S., the DHS caseworker questioned her sincerity. Even if we credit Valerie's testimony, we remain concerned with her history of unhealthy relationships and her lack of protective capacity. That concern is also fueled by Valerie's inclusion of her father in her household, even after the DHS informed her that his presence was an impediment to S.S.'s return. As of the termination hearing, Valerie had no plans for her father to leave, despite describing their living situation as "temporary." Under these circumstances, we find clear and convincing evidence S.S. could not safely be returned to Valerie's custody.

**B. Best Interests of the Child**

We next turn to S.S.'s best interests. Iowa Code section 232.116(2) lays the foundation for this step in the analysis. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In addition, we consider whether S.S. "has become integrated" with his foster family. *Id.* § 232.116(2)(b).

Valerie argues that termination is not in S.S.'s best interests, relying on (1) the closeness of the mother-child bond and (2) S.S.'s improved behavior post-visitation. We start with her bond argument. As many parents' attorneys do,

---

placement is available." *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016). But more recent cases note that our supreme court often describes that element simply as the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either articulation, we find the State met its burden of proof.

Valerie's counsel conflates the best-interests analysis with the factors weighing against termination. *Compare* Iowa Code § 232.116(2) (best interests), *with id.* § 232.116(3)(c) (permissive factor); *see, e.g.*, *In re A.K.*, No. 18-1959, 2019 WL 325865, at *3 (Iowa Ct. App. Jan. 23, 2019). But we opt to address it here.

The record shows that Valerie's relationship with S.S. is more akin to a "friendship" than a healthy parent-child connection. Providers observed that S.S. did not believe that he could depend on Valerie to take care of him. By contrast, he was fully integrated into a pre-adoptive home with relatives. S.S. has forged bonds with his uncle, his fiancée, and their son. *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (considering child's positive adjustment to new home as part of best interests). What's more, we find no evidence to support Valerie's claim that S.S.'s behaviors improved as a result of regular visits with her. Under these circumstances, we find termination is in S.S.'s best interests.

## C. Extension for Reunification

Finally, as an alternative, Valerie requests more time to work toward reunification. Courts do have the discretion to delay permanency. Iowa Code § 232.102(2)(b). But to do so, the court must itemize the expectations of the parent and determine that the child could be returned after six months of meeting those expectations. *Id.*

During the CINA case, the court allowed Valerie an additional three months to regain custody. But, as the State correctly points out, she was unable to meet the court's expectations. Now Valerie concedes her engagement with S.S. was lacking leading up to the hearing. Yet she maintains an additional six months is justified. She emphasizes her progress in the summer of 2021. But the State

contends she squandered that first reprieve. Based on her lack of improvement in the fall of 2021, it claims she is unlikely to fulfill expectations during a second extension. *In re B.H.A.*, 938 N.W.2d 227, 236 (Iowa 2020).

On the one hand, Valerie did not fulfill the court's expectations during the first extension. She did not contribute to S.S.'s expenses, missed all but one drug testing appointment, visited S.S. less frequently, and did not maintain contact with his teachers. On the other hand, she did meet goals earlier in the case. Valerie maintained part-time employment and made efforts to secure more hours and opportunities for career growth, participated in mental health treatment, completed substance abuse treatment, found suitable housing (with the exception of her father's presence), and at times showed promise in parenting decisions. But Valerie's potential has been upstaged by her reality. We cannot further delay permanency for S.S. based on her unfulfilled potential.

We agree with the State's contention that her progress in six months will not likely be sufficient for reunification. The record shows that Valerie doesn't appreciate the serious transformation that must occur for S.S.'s safe return. We also fear that a longer delay could be damaging to S.S. "[A]ll extended time must be subtracted from an already shortened life for the child[] in a better home." *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987).

**AFFIRMED.**